636 So.2d 1022 (1994)
John A. DURANT and Patricia Durant
v.
STATE of Louisiana, Through the DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT.
Ricky P. FORET, Husband of and Gina Capro Foret
v.
John A. DURANT, et al.
John A. DURANT, Individually and as Administrator of the Estate of his minor child, Heather Durant
v.
STATE of Louisiana, Through the DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT and Champion Insurance Company.
Nos. 93 CA 1028 to 93 CA 1030.
Court of Appeal of Louisiana, First Circuit.
April 8, 1994.
Rehearing Denied May 18, 1994.
*1023 Herbert W. Barnes, Houma, for plaintiffs John and Patricia Durant.
Johnny Allemand, Thibodaux, Eldon E. Fallon, New Orleans, for plaintiffs Ricky and Gina Foret.
Charles Gary Blaize, Houma, for plaintiff Heather Durant.
James L. Harmon, Bruce L. Feingerts, New Orleans, for defendant-appellant State.
Before WATKINS, SHORTESS and FOGG, JJ.
WATKINS, Judge.
These consolidated cases arise from a vehicular collision that occurred on February 4, 1988, on La. Hwy. 1 near Raceland, Louisiana. Plaintiff, John Durant, sued the State of Louisiana through the Department of Transportation and Development (DOTD) for personal injury, in his individual capacity and as administrator of the estate of his minor daughter, Heather Durant, who also was injured in the accident. The other driver, Ricky Foret, filed suit against DOTD and Mr. Durant for personal injury. After a trial on the merits, the district court found Mr. Durant and DOTD equally (50%-50%) at fault for the damages and awarded judgments accordingly.
Both DOTD and Mr. Durant appeal, pointing the finger of fault at the other party and urging their own freedom from fault in causing the accident. DOTD also urges that the trial court erred in making excessive damage awards and in casting costs.

FACTS
The day of the accident was a rainy one, and the two-lane, undivided, paved roadway was wet. Mr. Durant, a native of the area, was familiar with the section of La. Hwy. 1 at *1024 its intersection with Sako Drive near Raceland, Louisiana. At about 2:30 p.m., he was traveling north on La. Hwy. 1, and he had his daughter as a passenger in his 1982 G.M.C. truck. Mr. Foret was traveling south in a 1978 Mack truck.
A third vehicle, driven by Diana Martin, was stopped in the northbound lane preparing to make a left turn onto Sako Drive. She had her automobile headlights and signal light on. According to Ms. Martin and other eye witnesses, the Durant vehicle passed the Martin vehicle on the right, on the shoulder. Although the Durant vehicle passed within inches of the Martin vehicle, they did not collide. Instead, the Durant vehicle re-entered La. Hwy. 1, crossed the roadway, and struck the Foret vehicle almost head-on.
The trial court found:
Mr. Durant, in order to avoid rear ending the stopped vehicle ... put on his brakes and ... his vehicle began to slide.... He took his foot off the brakes and turned on the shoulder.... He tried to drive along the highway. When he attempted to pull back on the highway[,] the vehicle[`s] bouncing on the shoulder from the humps and the eroded shoulder caused him to lose control and his vehicle shot across the road in front of the Martin vehicle striking Mr. Foret's truck.
Mr. Foret, Mr. Durant, and Heather Durant suffered personal injuries. The trial court awarded to them $150,000, $175,000, and $35,000 in general damages, respectively, plus special damages. Mrs. Foret and Mrs. Durant made claims for loss of consortium, and the trial court awarded $10,000 and $17,000, respectively.

LIABILITY OF DOTD
The majority of DOTD's assignments of error relate to the findings of the trial court regarding causation and defect; the remainder relate to percentages of fault, damages, and costs.
DOTD urges the court erred in finding: that the highway shoulder was defective; that the defect was a cause of the accident; that the testimony of the state's expert was not credible; that the state's maintenance procedures were inadequate; and that the state had constructive and/or actual notice of the defect. Additionally, DOTD contends the court erred in failing to find that Mr. Durant's negligence was the sole cause-in-fact of the accident.
The trial court found that Mr. Durant entered upon a shoulder which was undulating and narrowed to a mere 4.5 feet in width; that the shoulder was eroded and ragged; and that the shoulder had an accelerating slope toward a ditch. The trial judge concluded that the shoulder was defective and that the condition of the shoulder caused Mr. Durant to lose control of his vehicle and eventually strike the Foret vehicle. Furthermore, the court found that the state had, at least, constructive knowledge of the defect, and that the state had not maintained the shoulder as it should have been maintained.
The trial judge based his factual findings regarding the condition of the shoulder on his assessment of the credibility of the witnesses. The trial judge specified:
[T]he eroded shoulder caused him to lose control.... The testimony and this version of the accident is borne out by the measurements of the plaintiff's expert, Mr. [James] Clary, by Mr. Ricky Foret, Gina Capro Foret, John A. Durant and to an extent by Mrs. Diana Martin. The only contradiction we have for this version of the accident is the testimony of the defendant's expert, Mr. [Jeffery] Milburn. In order to adopt Mr. Milburn's version of the accident[,] the Court would have to find that John Durant lied, Ricky Foret lied, Gina Foret lied, Diana Martin lied and that Mr. Clary lied. The Court cannot do so. The Court does not find Mr. Milburn's version of the accident believable. I don't know what mathematics he used to come to his conclusion, but they were certainly flawed when the Court finds the testimony of the Forets, Mr. Durant and Mrs. Martin credible.
The Louisiana Supreme Court has promulgated general principles for appellate courts to follow when determining whether a trial court has committed manifest error by making factual findings that are "clearly wrong." One general principle concerns the *1025 credibility of witnesses. When factual findings are based on the credibility of witnesses, the factfinder's decision to credit a witness's testimony must be given "great deference" by the appellate court. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). However, credibility determinations may be clearly wrong when "documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit the witness's story...." Rosell, 549 So.2d at 844-45. Absent contradictory evidence or inconsistent or implausible statements, it is "virtually never" clearly wrong for the fact finder to accept one witness's version of the facts over another. Rosell, 549 So.2d at 845.
The factual findings challenged in the instant case are based on credibility determinations, as specified by the trial judge, and they must be afforded great deference. By our review of the record we have determined that the evidence does not seriously contradict the testimony of the witnesses credited by the trial judge; nor is their version of the accident so inconsistent as to make it implausible. Therefore, according to the general principle of appellate review previously cited, we conclude that the trial court's credibility determinations are not clearly wrong, and we will not disturb the court's factual findings.
Having concluded that the above mentioned factual findings are not clearly wrong, we reach DOTD's contention that the defective shoulder was not a cause-in-fact of the accident, as well as Mr. Durant's contention, in his cross appeal,[1] that the defective shoulder was the sole cause-in-fact of the accident.
The argument of DOTD in the instant case is similar to the proposition posed by DOTD and rejected by this court in Simpson v. State of Louisiana through Department of Transportation and Development, 636 So.2d 609 (La.App. 1st Cir.1993), a defective bridge case. Therein, we noted that DOTD attempted "to define causation solely by plaintiff's action, without consideration of the simultaneous causation stemming from defendant's inaction." We rejected the argument as an attempt by defendant to achieve the result that would have been achieved if contributory negligence were still a bar to recovery of damages under Louisiana law. See also, Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967, 971 (La.1985): "A pure comparative fault system was adopted in Louisiana in 1979 ... [and] was specifically designed to ameliorate the harshness of the contributory negligence doctrine by apportioning losses between the plaintiff and defendant when both are negligent [or at fault]."
In the instant case we find no merit in either DOTD's or Mr. Durant's contention that there was a single cause of the accident. We agree with the trial court that the combination of the defective shoulder and Mr. Durant's negligence, which led him to drive onto the shoulder, caused his vehicle to be out of control when he re-entered the highway.

APPORTIONMENT OF FAULT
The apportionment of fault among parties in a personal injury case is a task for the fact finder. Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967. In the instant case the trial judge stated that he applied the factors listed in Watson in assessing fault equally between Mr. Durant and DOTD. Finding no error in the application of the Watson factors to the facts of the instant case, we cannot replace the conclusion reached by the trial court with our own evaluation of the facts. Sistler v. Liberty Mutual Insurance Co., 558 So.2d 1106 (La. 1990).

DAMAGES
DOTD further asserts that the trial court awarded excessive damages to the injured parties. DOTD specifically challenges *1026 the general damages awards made to Mr. Foret, Mr. Durant, and Heather Durant. However, our jurisprudence, already replete with language cautioning the appellate courts not to disturb general damages awards absent a clear abuse of discretion by the trial court, has been augmented with a caveat of additional force in Youn v. Overseas Maritime Corp., 623 So.2d 1257 (La.1993). The trier of fact has vast discretion to award general damages, and the appellate court should rarely disturb a general damages award. Suffice it to say, we do not find the instant case to be the "rare" one which would allow us to disregard the "vast" discretion of the trial court. Accordingly, we affirm the general damages award to the three injured individuals.
Other damage awards challenged by DOTD are: the award to Patricia Durant of $17,000 for loss of consortium; the award to Mr. Foret of $14,000 for past lost earnings; and the awards to Mr. Durant of $143,000 for past lost wages and $125,000 for future lost wages.
Apparently, the basis for DOTD's challenge of the loss of consortium award is the fact that following the accident Mr. and Mrs. Durant had a baby. DOTD views this fact as grounds for discrediting her testimony that the couple's sex life was "interrupted" by her husband's back injury. We find no merit to this argument, and we will not disturb the trial court's award for loss of consortium.
DOTD's challenge to the loss of earnings award to Mr. Foret is also without merit. DOTD admits that it is "obviously difficult" to accurately assess the earnings of a self-employed trucker with no distinct salary. We agree; however, we find that the low sum of $14,000 reflects an accurate evaluation of the evidence showing that Mr. Foret's average annual earnings did not exceed $15,000.
Next we consider DOTD's challenge to the awards to Mr. Durant for lost wages. Mr. Durant was born June 6, 1955; the date of his accident was February 4, 1988. At the time of trial, Mr. Durant's future work-life expectancy was 23.3 years. Prior to the accident Mr. Durant was employed as a wireline operator with Camco, Inc.; he earned $30,371 during the last full year of work prior to his accident.
The trial court awarded Mr. Durant a total of $268,000 for lost wages, consisting of $143,000 for past lost wages and $125,000 for future lost wages. Dr. G. Randolph Rice, an expert economist whose report was entered into evidence, calculated Mr. Durant's total lost wages and fringe benefits, discounted to a present day value, at $614,170; the figure consisted of $143,201 for past lost wages, $370,992 for future lost wages, and $99,977 for lost fringe benefits. Thus, the trial court awarded less than half of the wages substantiated by Mr. Durant's expert.
Nevertheless, DOTD claims the awards were in error. DOTD complains that the sum of $143,201 should have been reduced because the testimony at trial was that Mr. Durant's failure to return to any type of work prior to trial was of his own choosing. Additionally, DOTD points out that its own experts, Dr. Kenneth Boudreaux and Ms. Margo Hoffman, testified to significantly lower future wage losses.
Although DOTD's argument is logical, we must look to the total award. DOTD admits that Mr. Durant's injury will limit his capacity to earn the type of salary he had been earning prior to the accident; that he probably will be limited to minimum wage or near minimum wage employment. Considering all of the testimony of record regarding Mr. Durant's wage loses, we cannot say that the trial court abused its discretion in weighing the evidence and making the awards it did make.

COSTS
Finally, we reach the issue of costs. First, DOTD complains that the expert witness fees fixed by the trial court were excessive. It is elementary that the fixing of expert witness fees is particularly within the province of the trial court, which had the opportunity to assess the services performed by the witnesses. We will not disturb the witness fees fixed by the trial court.
*1027 Following a rule to fix and tax costs of court, the trial judge rendered judgment in favor of all plaintiffs and against DOTD for all costs of court. We agree with DOTD that there is no reasonable basis for casting DOTD for 100% of the costs, especially in light of the trial court's decision that Mr. Durant and DOTD were each only 50% at fault in causing the accident. Accordingly, we will amend the judgment on rule rendered and signed on December 3, 1992, to cast Mr. Durant and DOTD for 50% each of the costs itemized in that judgment. Likewise, we cast Mr. Durant and DOTD, the two appellants, for 50% each of the costs of appeal, which total $4,864.80.
In all other respects, we affirm the judgment of the trial court.
AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] In his brief as appellant, Mr. Durant states the following assignment of error: "The trial court erred in its determination that John Durant's fault was fifty (50%) percent of the legal cause of the accident at issue." In his argument Mr. Durant concedes that he was at fault for not being able to bring his vehicle to a stop behind the stationary Martin vehicle; however, he argues that he would have successfully avoided any accident absent the defect in the shoulder.